## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

    **v.**
                                     **Case No. 2:23-cr-0066**
                                     **Judge Edmund A. Sargus, Jr.**

**KEITH A. WHEELER, JR.,**

       **Defendant.**

### OPINION AND ORDER

This matter is before the Court on Defendant Keith A. Wheeler Jr.'s motion to dismiss an indictment charging him with possession of a firearm by a person convicted in any court of a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9). (ECF No. 23.) Mr. Wheeler argues that his prior conviction does not qualify as a "misdemeanor crime of violence" and that § 922(g)(9) is unconstitutional under the Second Amendment. The Government opposes that motion. (ECF No. 27.) For the reasons below, Mr. Wheeler's motion is **DENIED**.

## I.  BACKGROUND

On March 27, 2019, a criminal complaint was filed against Mr. Wheeler in the Franklin County Municipal Court charging Mr. Wheeler with assault and alleging that he did "knowingly cause physical harm to another, to wit: knot on forehead from being punched with a closed fist, to a family member to wit: [name redacted] live in girlfriend." (ECF No. 27-1.) Mr. Wheeler later pleaded guilty to an amended misdemeanor charge of attempted domestic violence, and in exchange, the assault count was dismissed. (ECF Nos. 27-2, 27-3.)

Several years later, on July 29, 2022, an ATF agent working in an undercover capacity observed a Vulcan V10-45 .45 caliber pistol for sale on Armslist.com. [1] (ECF No. 27, PageID 129.) The undercover officer began communicating with the seller of that pistol and arranged a meeting for the sale of the firearm on August 3, 2022. (*Id.*) On August 3, 2022, Mr. Wheeler arrived at the meeting location, retrieved a bag from the trunk of his car, and went to meet the undercover officer. (*Id.* at PageID 130.) After examining the firearm, the undercover officer gave Mr. Wheeler $800 in exchange for the firearm and a bill of sale handwritten on a piece of notebook paper. (*Id.*)

After Mr. Wheeler sold the firearm to the undercover officer, an investigation ensued, which revealed that Mr. Wheeler was charged with two more domestic violence offenses in May 2020 and March 2021 in the Licking County, Ohio Municipal Court (Case Nos. 20CRB00689 and 21CRB00255).[2] (*Id.* at PageID 151.) Subsequently, a Grand Jury returned an Indictment on March 23, 2023 charging Mr. Wheeler with one count of Possession of a Firearm after a Domestic Violence Conviction in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(8). (ECF No. 3.) Mr. Wheeler now moves to dismiss the Indictment. (ECF No. 23.)

---

[1] The Government states that "the facts encompassed in the Indictment reveal" that Mr. Wheeler sold a firearm to an undercover officer on August 3, 2022, but the Government's briefing, not the Indictment, details the sale of the firearm. (*See* ECF Nos. 3, 27.) The Indictment here is not a speaking indictment. Nevertheless, the Indictment is sufficient, containing only a "plain, concise and definite written statement of the essential facts constituting the offense charged." *United States v. Rosser*, No. 22-3887, 2023 U.S. App. LEXIS 15609, at *7 (6th Cir. June 20, 2023) (citing Fed. R. Crim. P. 7(c)(1)).

[2] Although Mr. Wheeler was charged with a domestic violence offense in May 2020, he pleaded guilty to a charge of obstructing official business and the domestic violence charge was dismissed. (Case No. 20CRB00689.) Mr. Wheeler was again charged with domestic violence, aggravated menacing, and assault in March 2021 and pleaded guilty to a charge of assault. (Case No. 21CRB00255.)

2

## II.     STANDARD OF REVIEW

Rule 12 of the Federal Rules of Criminal Procedure states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A defendant may seek dismissal of a defective indictment under Rule 12(b)(3)(B)(v). The Court can rule on a motion to dismiss before trial "if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997); *see also United States v. Med 1st*, No. 3:16-CR-000076-JHM, 2017 WL 4848823, at *1 (W.D. Ky. Oct. 26, 2017) ("The Court 'may make preliminary findings of fact necessary to decide the questions of law presented by a pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact.'" (quotation omitted)). When ruling on a pretrial motion to dismiss an indictment, the Court reads the indictment "as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *United States v. McAuliffe*, 490 F.3d 526, 530 (6th Cir. 2007). "An indictment is to be construed liberally in favor of its sufficiency." *Id.* at 531 (citing *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002)).

## III.     ANALYSIS

Mr. Wheeler first argues that the Indictment should be dismissed because his prior conviction of attempted domestic violence is a "legal fiction." He asserts that his conviction is not a categorical match to 18 U.S.C. § 922(g)(9), which prohibits a person convicted of a misdemeanor crime of domestic violence from possessing a firearm. Then Mr. Wheeler raises both facial and as-applied constitutional challenges to the lifetime prohibition on possession of a firearm by a person convicted of a misdemeanor crime of domestic violence under § 922(g)(9).

As discussed below, Mr. Wheeler fails to persuade the Court that his Indictment should be dismissed.

  **A.**  **Mr. Wheeler's prior conviction is a misdemeanor crime of domestic violence.**

  Mr. Wheeler first argues that the Indictment should be dismissed because his conviction for attempted domestic violence is a "legal fiction" and "not a cognizable offense under Ohio law." (ECF No. 23, PageID 78–79.) Because his conviction was a legal fiction, Mr. Wheeler contends that his prior conviction cannot qualify as a "misdemeanor crime of domestic violence" under § 922(g)(9). (*Id.* at PageID 80–82.)

  By describing his underlying state-court conviction as a "legal fiction," Mr. Wheeler impermissibly raises a collateral attack on his state-court conviction. A defendant cannot collaterally attack the validity of a state-court conviction that the Government seeks to use in federal court. *Custis v. United States*, 511 U.S. 485, 496 (1994); *United States v. Gordy*, Nos. 98-5622; 98-5623, 2000 U.S. App. LEXIS 3231, at *17 (6th Cir. Feb. 23, 2000) (affirming district court decision that a defendant could not attack the validity of a state-court conviction). Our system affords defendants numerous opportunities to challenge the constitutionality of their convictions through the appeal process and other postconviction proceedings available under state law, as well as petitions for writs of habeas corpus. *United States v. Carver*, No. 3:12-cr-00130-1, 2013 U.S. Dist. LEXIS 94019, at *7 (M.D. Tenn. July 2, 2013). Allowing a collateral attack on a prior state-court conviction in an unrelated federal proceeding would inevitably delay and impair the orderly administration of justice by depriving the state-court judgment of its normal force. *Id.* (citing *Custis*, 511 U.S. at 497).

  Therefore, this Court will not entertain arguments related to the underlying validity of Mr. Wheeler's domestic violence conviction.

**B.     Mr. Wheeler's domestic violence conviction is a categorical match with § 922(g)(9).**

Mr. Wheeler next argues that his conviction is not a categorical match to the requirement under § 922(g)(9) that he be convicted of a prior misdemeanor crime of domestic violence. (ECF No. 23, PageID 81–82.) Because Mr. Wheeler was convicted of an attempt to commit domestic violence, Mr. Wheeler argues that he cannot satisfy the use of force requirement for § 922(g)(9) to apply. *Id.* The Government disagrees. (ECF No. 27.)

Section 922(g)(9) prohibits a person "who has been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm. To qualify as a misdemeanor crime of domestic violence, the predicate offense must have as an element "the use or attempted use of physical force" by a person who has a specified relationship with the victim. 18 U.S.C. § 921(a)(33)(A).

Ohio's domestic violence statute provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Ohio Rev. Code § 2919.25(A). The key term is "physical harm," which Ohio defines as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Ohio Rev. Code § 2901.01(A)(3). Force that causes or attempts to cause any of those things is "force." *United States v. Gatson*, 776 F.3d 405, 411 (6th Cir. 2015) (finding that Ohio Rev. Code § 2919.25(A) satisfies "the use of force" required for enhanced sentencing under 18 U.S.C. § 924(e)).

Both the applicable federal and state statutes contemplate the inclusion of attempted offenses. Accordingly, Mr. Wheeler's state law conviction for attempted domestic violence qualified as a misdemeanor crime of domestic violence because the crime contained an element of use or attempted use of physical force. As a result, § 922(g)(9) applies to Mr. Wheeler's

conviction for attempted domestic violence. The Court now turns to Mr. Wheeler's facial challenge.

### C.     Facial Challenge of 18 U.S.C. § 922(g)(9)

Mr. Wheeler also challenges the constitutionality of § 922(g)(9)[3] under the Second Amendment. The Second Amendment to the United States Constitution states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." To prevail on his facial challenge, Mr. Wheeler must establish that no set of circumstances exists under which § 922(g)(9) would be valid. *United States v. Salerno,* 481 U.S. 739, 745 (1987) (describing the facial challenge standard as "the most difficult"). The Court begins by examining the precedent by which it is bound.

#### 1.     Sixth Circuit Precedent

The Sixth Circuit has upheld the constitutionality of § 922(g)(9) under the Second Amendment but employed an analytical framework that may have been implicitly abrogated by the Supreme Court. *Compare Stimmel v. Sessions*, 879 F.3d 198 (6th Cir. 2018) (upholding § 922(g)(9) under intermediate scrutiny); with *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) (lambasting the scrutiny analysis in the Second Amendment context). Thus, the first question is whether *Stimmel* controls here.

This Court has held that *Bruen* did not directly reverse *Stimmel*. *See, e.g.*, *United States v. Martin*, 2:23-cr-177 (S.D. Ohio Jan. 19, 2024) (Watson, J.) (ECF No. 28) (denying motion to dismiss an indictment that challenged the constitutionality of § 922(g)(9)). Remarking that it is

---

[3] The Court notes that the question of the constitutionality of § 922(g)(8) is before the Supreme Court in the appeal of a Fifth Circuit case which held it unconstitutional under the Second Amendment. *United States v. Rahimi*, 61 F.4th 443 (5th Cir.), *cert. granted*, 143 S. Ct. 2688, 216 L. Ed. 2d 1255 (2023). Section 922(g)(8) prohibits individuals subject to a domestic violence protective order from possessing a firearm. *See* 18 U.S.C. 922(g)(8).

not the province of this Court to announce the abrogation of a Sixth Circuit decision, this Court has chosen to follow *Stimmel* unless and until the Sixth Circuit decides otherwise. *Id.* at 5.

Since *Stimmel* is binding precent, and *Stimmel* held that § 922(g)(9) is constitutional under the Second Amendment, Mr. Wheeler's facial challenge to § 922(g)(9) fails. Alternatively, § 922(g)(9) survives under the *Bruen* framework.

##### 2. The *Bruen* Framework

Even if the Court were not bound by the Sixth Circuit precedent in *Stimmel*, and instead reviewed Mr. Wheeler's motion under the *Bruen* framework, the motion would still fail. The *Bruen* Court laid out the new framework as follows:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Bruen*, 597 U.S. at 17. So to determine whether a regulation is valid under the Second Amendment, the Court first determines whether the plain text of the Second Amendment covers the regulated conduct. *Id.* If the text covers the conduct, then the Government's regulation is presumptively invalid and the burden shifts to the Government to justify the regulation by demonstrating that it is "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 24. The second step of the Court's inquiry "requires only that the Government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30 (emphasis in original).

Mr. Wheeler argues that § 922(g)(9) is unconstitutional under *Bruen* because the Government cannot point to a historical analogue disarming domestic violence misdemeanants at the time the Second Amendment was ratified. (ECF No. 23, PageID 94, 101.)

The Government responds that Mr. Wheeler's right to bear arms is not protected by the Second Amendment because domestic violence misdemeanants are not included among "the people" protected by the Amendment. (ECF No., 27, PageID 136–39.) But even if the Second Amendment did apply, § 922(g)(9) is analogous to the historical tradition of disarming those who pose a danger to others or to society. (*Id.* at PageID 148–49.)

> **a.    The plain text of the Second Amendment covers the conduct regulated by § 922(g)(9).**

Mr. Wheeler argues that § 922(g)(9) is presumptively invalid because individuals convicted of misdemeanor crimes of domestic violence are part of "the people" covered by the plain text of the Second Amendment. (ECF No. 23, PageID 90–94.) In response, the Government contends that "the people" under the Second Amendment applies only to law-abiding, responsible citizens. (ECF No. 27, PageID 135.)

Construing "the people" broadly, as the Supreme Court has, individuals with misdemeanor domestic violence convictions are presumptively included in the term "the people." *District of Columbia v. Heller*, 554 U.S. 570, 580–81 (2008) (concluding "the people" "unambiguously refers to all members of the political community" … including "all Americans"); *see also United States v. Goins*, 647 F. Supp. 3d 538, 547 (E.D. Ky. 2022) ("Treating some groups as not part of the people protected under the Second Amendment is also inconsistent with *Heller*.").

Accordingly, § 922(g)(9) is a regulation on conduct covered by the plain text of the Second Amendment. The burden shifts to the Government to justify the regulation through identification of a sufficient historical analogue. The Court finds that the Government met its burden and § 922(g)(9) is justified by this Nation's historical tradition of firearm regulation.

### b.   Section 922(g)(9) is justified by this Nation's historical tradition of firearm regulation.

History supports Congress's decision to strip individuals convicted of misdemeanor crimes of domestic violence of their right to bear arms. To be constitutional under the *Bruen* framework, § 922(g)(9) must be "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. But *Bruen* made clear that "analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original).

The Government points to multiple historical analogues demonstrating that § 922(g)(9) is consistent with the history and tradition of firearm regulation. (ECF No. 27, PageID 140–45.) As understood in its historical context, the Second Amendment guarantees the "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 9. This understanding is evidenced by historical laws that disarmed entire classes of people who, at the time, were viewed as dangerous. *E.g.*, *United States v. Goins*, 647 F. Supp. 3d 538, 549–54 (E.D. Ky. 2022) (collecting historical examples on common law traditions of disarming groups of dangerous individuals); *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010) (collecting authority on laws disarming felons and habitual drug users). "Both before and after the revolutionary war, states disarmed slaves and Native Americans" because state legislatures feared they would use guns to revolt. *Goins*, 647 F. Supp. at 554 (citing *Kanter v. Barr*, 919 F.3d 437, 464–65 (7th Cir. 2019) (Barrett, J., dissenting)); *United States v. MacKey*, No. 2:23-cr-67, 2023 U.S. Dist. LEXIS 208459, at *6 (S.D. Ohio Nov. 21, 2023) (Watson, J.) (discussing the disarmament of certain racial, religious, and political groups perceived as dangerous). Several colonial states also restricted gun ownership only to those who exhibited loyalty to the state or

country by swearing an oath of allegiance. *United States v. Carpio-Leon*, 701 F.3d 974, 979 (4th Cir. 2012) (referencing Pennsylvania and Connecticut laws at the founding).

While many of the laws described above would be unconstitutional if enacted today, they reflect a historical tradition of disarming citizens presumed to be dangerous. *MacKey*, 2023 U.S. Dist. LEXIS 208459 at *6. The history and tradition relevant to the Second Amendment, dating from English common law to the early colonial period, support Congress's power to disarm those it declares dangerous.

Prohibitions on the possession of firearms by those convicted of misdemeanor crimes of domestic violence fit comfortably within the historical framework of regulations designed to keep firearms away from dangerous people. The conclusion that domestic violence misdemeanants are dangerous is well supported. First, empirical evidence and statistics show an increased risks of serious harm or death when firearms are present in connection with domestic violence. Second, the recidivism rates by those convicted of crimes of domestic violence are high, demonstrating an increased risk of danger if those with prior convictions could possess firearms.

That firearms cause injury or death in domestic situations is well established. The presence of a gun in the home of a convicted domestic abuser is "strongly and independently associated with an increased risk of homicide." *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (citing Arthur L. Kellermann, et al., *Gun Ownership as a Risk Factor for Homicide in the Home*, 329 New England J. Medicine 1084, 1087 (1993); Jacquelyn C. Campbell, et al., *Risk Factors for Femicide in Abusive Relationships: Results from a Multisite Case Control Study*, 93 Am. J. Pub. Health 1089, 1090 (2003)). More than half of the women who are killed by their intimate partner are killed with guns. *See* Violence Policy Center, *When Men Murder Women:*

10

*An Analysis of 2020 Homicide Data* (Sept. 2022) (noting that among the females killed by intimate partners, 65% were killed with guns).

The recidivism rates also support finding that those convicted of misdemeanor crimes of domestic violence pose a danger to the public and keeping firearms out of their possession. A study of those arrested for misdemeanor domestic violence in Cincinnati, Ohio concluded that 17% of those who remained in the area were arrested again for domestic violence within three years. John Wooldredge & Amy Thistlethwaite, *Reconsidering Domestic Violence Recidivism: Individual and Contextual Effects of Court Dispositions and Stake in Conformity,* Project Report Submitted to the Nat'l Inst. of Justice (1999). This recidivism rate, however, only accounts for arrests. The full recidivism rate includes violence that does not lead to an arrest and is estimated to be closer between 40% to 80% "when victims are followed longitudinally and interviewed directly." Carla Smith Stover, *Domestic Violence Research*, 20 J. Interpersonal Violence 448, 450 (2005). Thus, the disarming of domestic violence misdemeanants is supported by the history and tradition in this country of disarming dangerous individuals.

Mr. Wheeler tries to distinguish the above by noting that many statutes disarming individuals perceived as "dangerous" did so by disarming individuals convicted of felonies, not misdemeanors. (ECF No. 23, PageID 97.) Further, according to Mr. Wheeler, domestic violence was not criminalized, and was in fact condoned at our Nation's founding. (*Id*. at PageID 98.) This argument reads *Bruen*'s "analogue" requirement too narrowly and is unpersuasive.

This Court, like others in the Circuit, refuses to allow our jurisprudence to regress to the point of "condoning" domestic violence. *E.g.*, *United States v. Martin*, No. 2:23-cv-177 at 9 (S.D. Ohio Jan. 19, 2024) (Watson, J.) (ECF No. 28) (upholding constitutionality of § 922(g)(9)). To do so, would be to negate the important progress our Nation has made in addressing this

serious offense. *See Georgia v. Randolph*, 547 U.S. 103, 117 (2006) (recognizing "that domestic abuse is a serious problem in the United States").

Further, Mr. Wheeler's suggestion that there must be an exact historical analogue has been squarely rejected in an analogous context by the Sixth Circuit. In the context of drug trafficking, the Sixth Circuit held that "[t]he mere fact" that certain drug laws "were not enacted until recently does not automatically render the possession of weapons by drug traffickers within the scope of the Second Amendment right as historically understood." *United States v. Greeno*, 679 F.3d 510, 519 (6th Cir. 2012), *abrogated on other grounds by Bruen*, 597 U.S. 1 (2022). The criminal code has evolved dramatically since this Nation's founding. To suggest that only people convicted of crimes with an exact historical analogue can be subject to gun restrictions would create absurd results. *United States v. Nutter*, 624 F. Supp. 3d 636, 642 (S.D. W. Va. 2022) (upholding constitutionality of § 922(g)(9) after *Bruen*). Like the Sixth Circuit, this Court rejects "such a static reading of the Second Amendment." *Greeno*, 679 F.3d at 519.

Mr. Wheeler's attempt to distinguish the historical analogues disarming dangerous individuals convicted of felonies, instead of misdemeanors, is also unpersuasive. This "loophole" allowing those with violent misdemeanors akin to felonies to continue to possess firearms is precisely the reason Congress passed § 922(g)(9). *See United States v. Hayes*, 555 U.S. 415, 426 (2009) (noting that legislative history of § 922(g)(9)). Existing felon-in-possession laws were not keeping firearms out of the hands of domestic abusers because many people who engage in serious spousal or child abuse ultimately were not charged with or convicted of felonies. *Id.* Accordingly, Congress designed § 922(g)(9) to close this dangerous loophole. *Id.* Further, after considering the dangers discussed above, courts addressing § 922(g)(9) have found that domestic violence misdemeanants can be viewed as similar to felons who should be denied weapons for

the same reasons. *Nutter*, 624 F. Supp. 3d at 644; *United States v. Jackson*, No. CR-22-59-D, 2022 U.S. Dist. LEXIS 148911 (W.D. Okla. Aug. 19, 2022).

Accordingly, Mr. Wheeler's facial challenge of §922(g)(9) fails. Mr. Wheeler did not establish that there are no set of circumstances under which the law would be valid. *United States v. Martin*, No. 2:23-cv-177 at 9 (S.D. Ohio Jan. 19, 2024) (Watson, J.) (ECF No. 28); *Salerno,* 481 U.S. at 745 (describing the facial challenge standard as requiring that the challenger establish that "no set of circumstances exist" under which the law would be valid). The Government has put forth sufficient historical analogues disarming dangerous individuals. Thus, § 922(g)(9) is not unconstitutional on its face.

### D.     As-Applied Challenge of § 922(g)(9)

Mr. Wheeler next argues that § 922(g)(9) is unconstitutional as applied to him. First, he argues that he is not a dangerous person that would allow for limitations on his right to bear arms under the Second Amendment. (ECF No. 23, PageID 101–04.) Second, Mr. Wheeler argues that he was not afforded adequate due process before he was deprived of his right to bear arms. (*Id.* at PageID 105–08.)

First, the Court finds that even if an individual review were available to Mr. Wheeler, he fails to identify anything about his circumstances that would make him any less dangerous that any other domestic violence offender prohibited from possessing a firearm. To the contrary, the Government offers evidence the Mr. Wheeler was charged twice more with domestic violence related offenses in the Licking County Municipal Court in 2020 and 2021.[4] (ECF No. 27, PageID

---

[4] In May 2020, Mr. Wheeler was charged with a domestic violence offense and obstructing official business. (Case No. 20CRB00689.) He pleaded guilty to the charge of obstructing official business and the domestic violence charge was dismissed. (*Id.*) In March 2021, Mr. Wheeler was charged with domestic violence, aggravated menacing, and assault. (Case No. 21CRB00255.) He pleaded guilty to the assault charge. (*Id.*)

1550–51.) Thus, even if an individualized determination of dangerousness were viable, Mr. Wheeler offers nothing in the way of his specific circumstances to suggest that § 922(g)(9) is unconstitutional as applied to him.

Mr. Wheeler's due process argument is also unpersuasive. Mr. Wheeler argues that the procedural safeguards under § 922(g)(9) are inadequate. (ECF No. 23, PageID 106–07.) He explains that when he agreed to plead guilty to the misdemeanor charge of attempted domestic violence, he was not sufficiently apprised that he would be deprived of his right to bear arms because of his conviction. (*Id.*)

To convict a defendant of illegal possession of a firearm under § 922(g), the Government must prove only that "the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Rehaif v. United States*, 139 S. Ct. 2191, 2194 (2019). Mr. Wheeler's relevant status under § 922(g)(9) is that of a domestic violence misdemeanant. In other words, the Government need only prove that Mr. Wheeler knew he had been convicted in any court of a misdemeanor crime of domestic violence at the time he possessed the firearm. *See e.g.*, *United States v. Beavers*, 206 F.3d 706, 708 (6th Cir. 2000). The Government need not prove that Mr. Wheeler had actual knowledge that possessing a firearm was illegal. *Id.* (holding that § 922(g)(9) does not require the government to prove that the defendant had actual knowledge that possessing a firearm was illegal); *Taylor v. United States*, No. 3:20-cr-93, 2023 U.S. Dist. LEXIS 178905, at *4 (N.D. Ohio Oct. 4, 2023) (denying motion to vacate conviction under § 922(g)(9) because the defendant had two convictions of domestic violence when he possessed the firearm). A defendant need only "know the facts that make his conduct fit the definition of the offense," even if he claims to "not know those facts give rise to a crime." *See, e.g.*, *Elonis v. United States*, 575 U.S. 723, 735 (2015) (citation omitted).

14

Mr. Wheeler knew when he possessed the firearm subject to this Indictment that he was convicted of a misdemeanor crime of domestic violence. He learned of his relevant status under § 922(g)(9) when he entered his guilty plea to a misdemeanor crime of domestic violence in the Franklin County Municipal Court. (ECF No. 27-3, PageID 161.) It is no defense that Mr. Wheeler may not have recognized that he personally was prohibited from possessing a firearm. *Beavers*, 206 F.3d at 708. His conviction placed him on notice that the government might regulate his ability to possess or own a firearm. *Id.* Accordingly, Mr. Wheeler's as-applied challenge fails.

## IV. CONCLUSION

For the reasons above, Mr. Wheeler's Motion to Dismiss the Indictment is **DENIED**. (ECF No. 23.)


**IT IS SO ORDERED.**

**4/11/2024**                                              **s/Edmund A. Sargus, Jr.**
**DATE**                                                     **EDMUND A. SARGUS, JR.**
                                                                   **UNITED STATES DISTRICT JUDGE**